1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACK WARD, | ) CASE NO. CV 11-06358 MMM (CWx) |
| Plaintiff, | ) |
| | ) ORDER GRANTING IN PART AND |
| vs. | ) DENYING IN PART DEFENDANTS' |
| | ) MOTION FOR PARTIAL SUMMARY |
| NATIONAL ENTERTAINMENT | ) JUDGMENT |
| COLLECTIBLES ASSOCIATION, INC., | ) |
| and JOEL WEINSHANKER, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

On October 1, 2012, defendants National Entertainment Collectibles Association, Inc. ("NECA") and Joel Weinshanker, NECA's sole shareholder, filed a motion for partial summary judgment on several of plaintiff Zack Ward's damage claims.[1]   On October 9, 2012, Ward opposed the motion.[2]

---

[1]Motion for Partial Summary Judgment ("Motion"), Docket No. 125 (Oct. 1, 2012).  See also Reply in Support of Motion for Partial Summary Judgment ("Reply"), Docket No. 139 (Oct. 15, 2012).

[2]Opposition to Motion to Dismiss ("Opposition"), Docket No. 129 (Oct. 9, 2012).

# I. FACTUAL BACKGROUND

In approximately 1983, Ward was cast to play a subsidiary bully character named "Scut Farkus" in *A Christmas Story* ("the film").[3] Ward's contract was silent as to the film producer's right to use Ward's name, likeness, or persona on merchandise or other products based on the film.[4] Twenty years later, NECA entered into a licensing agreement with Warner Bros. Consumer Products, pursuant to which NECA was authorized to sell various derivative merchandise based on the film.[5] In 2005, NECA was granted the right to produce and sell a board game based on the film.[6] In October 2006, Weinshanker contacted Ward on NECA's behalf to discuss using Ward's likeness on its merchandise; the parties subsequently entered into a License agreement governing such use.[7] Under the license agreement, NECA was granted the exclusive right to use Ward's likeness on its merchandise.[8] NECA, in return, was required to pay Ward a royalty of two per cent of its net receipts from the sale of authorized products.[9]

Subsequent to execution of the license agreement, NECA produced an action figure based on Ward's character, Scut Farkus.[10] It also produced a board game based on the film.[11] The back

---

[3]Statement of Uncontroverted Facts ("SUF"), ¶ 1; Statement of Genuine Issues of Fact ("SGI"), ¶ 1.

[4]SUF, ¶ 3; SGI, ¶ 3.

[5]SUF, ¶ 4; SGI, ¶ 4.

[6]SUF, ¶ 7; SGI, ¶ 7.

[7]SUF, ¶¶ 8,9; SGI, ¶¶ 8,9.

[8]Declaration of Joel Weinshanker ("Weinshanker Decl."), Docket No. 125 (Oct. 1, 2012), Exh. C, ¶ 1 ("[Ward] hereby authorize[s] [NECA] to manufacture, distribute, vend and sell products . . . bearing [his] names, photographs, likenesses, symbols, emblems and designs."

[9]*Id.*, ¶ 3(a).

[10]SUF, ¶ 16; SGI, ¶ 16.

[11]SUF, ¶ 17; SGI, ¶ 17.

2

of the box in which the board game is packaged bears a small image of Ward's face.[12]   The photograph is one of several on the box.[13]

On July 3, 2010, Ward initiated this action against NECA in the District of New Jersey; on May 5, 2011, he filed an amended complaint alleging claims for promissory fraud, common law fraud, breach of contract, misappropriation of likeness, violation of his right to publicity, and violation of the Lanham Act.[14]   Ward alleges that defendants fraudulently induced him to enter into the license agreement, that they have failed to pay royalties due under the license agreement, and that they continue to use his image and likeness without his consent.[15]   The action was transferred to this court on August 2, 2011.[16]

During the course of discovery, defendants sought evidence of Ward's damages.   On July 18, 2012, in his third supplemental response to an interrogatory requesting a specific calculation of damages, Ward for the first time asserted a right to attorneys' fees and audit costs.[17]   He also contended that he had suffered $1.2 million in mental and emotional distress damages.[18]   Ward stated that he could not "presently determine" the amount of compensatory damages resulting from defendants' purported fraud.[19]

On October 1, 2012, defendants filed a motion for summary judgment, asserting that Ward has failed to adduce evidence that he is entitled to compensatory damages for fraud, emotional

---

[12]A Christmas Story: The Board Game, Notice of Lodging of Physical Evidence, Docket No. 136 (Oct. 15, 2012),

[13]*Id.*

[14]See generally Amended Complaint, Docket No. 37 (May 5, 2011).

[15]*Id.*

[16]Order Granting Motion to Transfer, Docket No. 76 (Aug. 2, 2011).

[17]Declaration of Kent R. Raygor ("Raygor Decl."), Docket No. 125 (Oct. 1, 2012), Exh. K.

[18]*Id.*

[19]*Id.*

distress damages arising from fraud, emotional distress damages caused by defendants' purported invasion of his privacy, attorneys' fees, and audit costs.

## II.  DISCUSSION

### A.     Standard Governing Motions for Summary Judgment

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.PROC. 56(c).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case.  See *id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); FED.R.CIV.PROC. 56(e).  Conclusory, speculative testimony in affidavits or moving papers is insufficient to meet this burden, or raise genuine issues of fact defeating summary judgment.  See *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).  "At the summary judgment stage," however, courts "do not focus on the admissibility of the evidence's form.  [They] instead focus on the admissibility of its contents."

1   *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253

2   F.3d 410, 418-19 (9th Cir. 2001), and *Federal Deposit Ins. Corp. v. New Hampshire Ins. Co.*,

3   953 F.2d 478, 485 (9th Cir. 1991)); *see Cutrona v. Sun Health Corp.*, No. CV

4   06-2184-PHX-MHM, 2008 WL 4446710, *7 (D. Ariz. Sept. 30, 2008) (on summary judgment,

5   "hearsay is admissible if there is any way to present it in an admissible form at trial"); *see also*

6   *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary

7   judgment, we may consider only that evidence which can be reduced to an admissible form").

8         In judging the evidence presented in support of or opposition to summary judgment, the

9   court does not make credibility determinations or weigh conflicting evidence.  Rather, it draws

10   all inferences in the light most favorable to the nonmoving party.  *See T.W. Electric Service, Inc.*

11   *v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

12         **B.**     **Whether Defendants Are Entitled to Partial Summary Judgment on Ward's**

13              **Prayer for Compensatory Damages for Fraud**

14         "Under California law, a party asserting fraud must establish that its damages are the

15   'proximate' or 'legal' result of the fraudulent conduct."  *OCM Principal Opportunities Fund v.*

16   *CICB World Markets Corp.*, 157 Cal.App.4th 835, 869-70 (2007).  See also *Goehring v.*

17   *Chapman University*, 121 Cal.App.4th 353, 364 (2004) ("To recover for fraud, the plaintiff must

18   prove 'detriment proximately caused' by the defendant's tortious conduct.  Deception without

19   resulting loss is not actionable fraud"); *Agnew v. Parks*, 172 Cal.App.2d 756, 768 (1959) ("It is

20   the rule that fraud without damage is not actionable").

21         Defendants contend that Ward has failed to adduce evidence that he suffered compensatory

22   damages as a result of their purported fraudulent conduct.[20]  Prior to the August 3, 2012 discovery

23   cut-off date, Ward adduced no evidence that he had suffered a detrimental change in financial

24   position as a result of the alleged fraud.  In Ward's initial Rule 26 disclosures, he provided no

25

26

27

28       [20]Motion at 10.

5

documents evidencing compensatory damages arising from the purported fraud.[21]  In response to defendants' requests for production of documents evidencing his damage calculations, Ward responded that he had no such documents.[22]  In response to an interrogatory seeking a computation of his compensatory damages, Ward responded that he could not "presently determine" the amount of his damages, and that he would supplement his response "as the information needed to compute those amounts bec[a]me[ ] available."[23]   Thereafter, Ward submitted three supplemental responses to defendants' interrogatories; none included evidence of compensatory damages.[24]

Ward does not dispute that he failed to identify and produce evidence of compensatory damages flowing from the purported fraud prior to the close of discovery.  He contends, however, that he provided a fourth supplemental response to defendants' interrogatory on August 25, 2012, which included a calculation of compensatory damages based on an expert report dated August 17, 2012.[25]  Defendants assert they never received a supplemental response in the mail, and that they did not receive a copy of it until October 23, 2012, two days after their motion for summary

---

[21]See Declaration of Kent R. Raygor ("Raygor Decl."), Exh. A, Docket No. 125 (Oct. 1, 2012).

[22]Raygor Decl., Exh. J at 45:9-18 ("REQUEST FOR PRODUCTION NO. 132: All DOCUMENTS and tangible things from which Defendants National Entertainment Collectibles Association, Inc. and Joel Weinshanker can determine and calculate the amount of the damages being claimed or other monetary award being sought by Plaintiff Zack Ward pursuant to his First Claim for Relief (for 'Fraud') asserted against Defendants National Entertainment Collectibles Association, Inc. and Joel Weinshanker in this action.  RESPONSE TO REQUEST FOR PRODUCTION NO. 132: The Plaintiff has no responsive documents in his possession, custody, or control, other than those that have been previously produced to the Defendants").  Ward supplied the same response to defendants' request for evidence regarding his second claim for common law fraud.  (*Id.* at 46:4-46:13.)

[23]Raygor Decl., Exh. K, at 2-5.

[24]See Raygor Decl., Exhs. I, J, K.

[25]Opposition at 3; Declaration of Randall S. Newman ("Newman Decl."), Docket No. 130 (Oct. 9, 2012), ¶ 17.

1    judgment had been filed.[26]  The supplemental response was dated August 3, 2012, but was not

2    signed and was not accompanied by a proof of service.[27]

3            Even assuming Ward mailed the supplemental response on August 23, 2012, it was

4    provided well after the August 3, 2012 discovery cut-off date.  This precluded defendants from

5    taking any discovery concerning the factual basis for the expert's opinion.  The purported mailing

6    date of August 23, 2012 was also after the deadline for the initial expert disclosures and the

7    exchange of expert witness reports.  Had the supplemental response been received by defendants

8    in the ordinary course of postal service business, it would, at the earliest, have been received on

9    Monday, August 27, 2012, only four days before rebuttal expert designations were due.  See,

10   e.g., *Loubriel v. Fondo del Seguro del Estado*, __ F.3d __, 2012 WL 4239812, *3 (1st Cir. Sept.

11   21, 2012) ("Courts have held that, in the context of first-class mailings, a reasonable time may

12   encompass anything from three to five days," citing *Taylor v. Books A Million, Inc.*, 296 F.3d

13   376, 379–80 (5th Cir. 2002) (suggesting that courts have presumed receipt dates ranging from 3

14   three to seven days after mailing); *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239

15   (3d Cir. 1999) (presuming that receipt is three days after mailing); *Sherlock v. Montefiore Med.*

16   *Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996) (same); *Banks v. Rockwell Int'l. N. Am. Aircraft Oper'ns.*,

17   855 F.2d 324, 326 (6th Cir. 1988) (presuming that receipt occurs five days after mailing)).  This

18   would have made it impossible for defendants to react in a timely fashion by designating an

19   appropriate rebuttal expert.

20           Rule 26(e) of the Federal Rules of Civil Procedure provides that, if a party's prior

21   responses or disclosures are incomplete or incorrect, and the additional or corrective information

22   has not otherwise been made known to his opponent during discovery or in writing, the party has

23   a continuing duty "seasonably" to supplement all interrogatory responses under Rule 33, and to

24   supplement disclosures under Rule 26(a) at appropriate intervals.  FED.R.CIV.PROC. 26(e)(1)-(2).

25

26           [26]Supplemental Declaration of Kent R. Raygor ("Supp. Raygor Decl"), Exh. A, Docket
27   No. 139 (Oct. 15, 2012).

28           [27]*Id.*

7

The fact that Ward supplemented his interrogatory response at a time when defendants could not obtain relevant discovery demonstrates that the supplement was neither was made "seasonably" or "at an appropriate interval." See, e.g., *Burke v. Bank of Baltimore*, 881 F.2d 1069, 1989 WL 87641, * 3 n. 2 (4th Cir. July 20, 1989) (Unpub. Disp.) (noting that one factor in the court's discretionary enforcement of Rule 26(e) is whether the opponent had "adequate time to discover the nature of the [newly disclosed witnesses'] testimony prior to trial"); *American Sporting Goods v. United States*, 120 F.Supp.2d 1089, 1090 (Ct. Int. Trade 2000) (finding that a supplemental response was not "seasonably" delivered, *inter alia*, because it was sent after discovery had closed); see also *Langer v. Presbyterian Medical Center of Philadelphia*, Civ. A. Nos. 87-4000, 88-1064, 1990 WL 171229, * 4 (E.D. Pa. Nov. 2, 1990) ("The Oxford American Dictionary defines 'seasonably' as 'timely,' and 'timely' as 'at just the right time'; Webster's Unabridged defines 'timely,' *inter alia*, as 'occurring at a suitable time' 'appropriate to the occasion'"), vacated on other grounds, 966 F.2d 786 (3d Cir. 1992); FED.R.CIV.PROC. 26, Advisory Committee Notes, 1993 Amendment ("Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches"). Here, even assuming the supplement was mailed as Ward suggests, it was neither seasonable nor at an appropriate interval.

Under Rule 37, "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED.R.CIV.PROC. 37(c)(1). "Two express exceptions ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The burden of establishing substantial justification and harmlessness is on the party who failed to make the required disclosure. *Id*. at 1107.

Ward offers no justification for failing to supplement his responses prior to August 23, 2012. He asserts that the supplement is based on an expert report completed on August 17, 2012;

1  he provides no justification for why the report was not compiled earlier, however.[28]  Although this

2  was the deadline for the designation of expert witnesses and exchange of expert reports, Ward,

3  by his own admission, did not even mail the supplement until after that date.  Moreover, as noted,

4  the timing of the supplement was such that it precluded defendants from designating a rebuttal

5  expert or effectively responding to the evidence.

6        Ward similarly does not address whether his delay was harmless to defendants.  If, in fact,

7  the supplement was not delivered until October 3, 2012, as defendants allege, the delay was not

8  harmless.  The expert who performed the damage calculation was deposed on September 17;

9  without the supplemental response, defendants were unable to examine him regarding his

10  calculations.[29]  By October 3, 2012, both the fact and expert discovery cut-off dates had passed.

11  As a consequence, defendants could not conduct fact discovery or designate a rebuttal expert to

12  address the damage calculation.[30]  Moreover, as noted above, even if the supplement was mailed

13  on October 23, 2012, and arrived three to seven days thereafter, defendants could not have

14  conducted fact discovery and would have been effectively precluded from designating a rebuttal

15  expert.  Consequently, the court concludes that Ward has demonstrated neither substantial

16  justification nor harmlessness.  As a result, exclusion of the evidence under Rule 37(c)(1) is

17  "automatic."  *Yeti by Molly*, 259 F.3d at 1106 ("The Advisory Committee Notes describe [the

18  sanction] as a 'self-executing,' 'automatic' sanction to 'provide[ ] a strong inducement for

19  disclosure of material. . . .' FED.R.CIV.P. 37 advisory committee's note (1993)").[31]

20        Other than the supplemental response, Ward has adduced no evidence that he detrimentally

21  changed his financial position as a result of defendants' allegedly fraudulent conduct.  The court

---

23  [28]Opposition at 3.

24  [29]Supp. Raygor Decl., ¶ 5.

25  [30]Minutes of Scheduling Conference, Docket No. 92 (March 19, 2012).

26  [31]Ward sent defendants a fifth supplement to his interrogatory response on October 15,
27  2012, the date defendants' reply brief was due.  (Supp. Raygor Decl., ¶ 9, Exh. G.)  For the
   reasons discussed above, this supplement was untimely and Ward cannot rely on it to defeat
28  summary judgment.

therefore concludes that defendants are entitled to have summary judgment entered in their favor on Ward's prayer for compensatory damages on his common law fraud and fraud under Civil Code §§ 1709-1710.

### C.    Whether Defendants are Entitled to Summary Judgment on Ward's Claim for Emotional Distress Damages

Defendants next assert that they are entitled to summary judgment on Ward's claim that he is entitled to emotional distress damages.[32]   Ward's amended complaint contains no allegations concerning mental or emotional distress.   In his third supplemental interrogatory response, however, Ward asserts that he is entitled to $1.2 million for "Mental and Emotional Distress" as a result of defendants' alleged wrongdoing.[33]

### 1.    Emotional Distress Resulting from Fraud

Under the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure,  "damages elements of [fraud] claims must be pled with particularity." *Wayne Merritt Motor Co. v. N.H. Ins. Co.*, No. 11-CV-01762-LHK, 2011 U.S. Dist. LEXIS 122320, *36 (N.D. Cal. Oct. 21, 2011); see also *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (where a plaintiff claims fraud, the "entire complaint must . . . be pleaded with particularity"); *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1121 (E.D. Cal. 2009) ("[I]n an action for fraud and deceit a cause of action is stated when the facts constituting the fraud are alleged and *a resulting injury is pleaded*" (emphasis added)).

Ward did not plead that he had suffered emotional damages, let alone plead those damages with particularity.[34]   He simply alleged that "[a]s a result of Weinshanker's deception, the Plaintiff

---

[32]Motion at 14.

[33]Raygor Decl., Exh. K.

[34]Ward contends that defendants had notice of his intent to seek emotional distress damages because the parties discussed these damages when conferring about a possible second amended complaint.  (Opposition at 4-5.)  Ward cites an order by Magistrate Judge Patty Schwartz, which stated that a second amended complaint was unnecessary to correct a factual allegation contained in the complaint because it could be embodied in the final pretrial order.  (*Id.*, citing Newman

is entitled to actual damages, punitive damage and costs in an amount to be determined at trial."[35] The amended complaint does not even plead that Ward suffered "anxiety, embarrassment, humiliation, shame, depression, feelings of powerlessness, anguish, etc." due to defendants' purported fraud. *Miller v. Nat'l Broadcasting Co.*, 187 Cal.App.3d 1463, 1485 (1986). If Rule 9(b) applied to the pleading of fraud damages, the court would conclude that Ward's complaint inadequately alleged emotional distress damages resulting from defendants' alleged fraud. Several courts have held, however, that damages caused by fraud need not be pled with the specificity required by Rule 9(b). See, e.g., *Menjivar v. Trophy Prop. IV DE, LLC*, Case No. C 06–03086 SI, 2006 WL 2884396, *13 (N.D. Cal. Oct. 10, 2006) ("While 9(b) requires pleading the circumstances of fraud with particularity, defendants cite no case law, and the Court finds none, requiring that fraud damages be pled with more specificity than required under normal notice pleading"); *Interserve, Inc. v. Fusion Garage PTE Ltd.*, Case No. C 09–5812 RS (PSG), 2011 WL 500497, *3 (N.D. Cal. Feb. 9, 2011) ("Rule 9(b) may not apply to the . . . damages elements of a fraud claim"); *Andrews Farms v. Calcot, Ltd.*, 527 F.Supp.2d 1239, 1252 (E.D. Cal. 2007) ("While Rule 9(b) requires pleading the circumstances of fraud with particularity, defendants cite no case law, and the Court finds none, requiring that fraud damages be pled with more specificity than required under normal notice pleading"). The court concurs with these decisions. Ward's allegation that he suffered "actual damages" as a result of defendants' fraud therefore suffices to meet his pleading burden. See *Smolinski v. Oppenheimer*, No. 11 C 7005, 2012 WL 2885175, *3 (N.D. Ill. July 11, 2012) ("[E]ven if the court could not consider Smolinski's affidavit, it would still not be appropriate to dismiss his complaint merely because his damages were alleged generally. The emotional distress damages pled in Smolinski's complaint are general damages that fall under the same Rule 8 notice pleading standard as the rest of the complaint; they need not be pled with specificity to make out a plausible case that he is entitled to relief, which is all that

---

Decl., Exh. 13.) Judge Schwartz's order, however, concerned only a specific correction to a factual allegation in the amended complaint; it did not state Ward was free to pursue claims outside the pleading.

[35]Amended Complaint, ¶¶ 124, 132,

*Twombly* requires"); *see also Sanchez v. United States*, 803 F.Supp.2d 1066, 1073 (C.D. Cal. 2011) ("General damages are awarded as compensation for physical pain, fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror, or ordeal").

There is a more fundamental problems with Ward's prayer for emotional distress damages resulting from defendants' fraud, however. Under California law, "a fraud claim cannot rest solely on emotional distress damages." *De la Cerra Frances v. de Anda*, 224 Fed. Appx. 637, 638 (9th Cir. Mar. 12, 2007). See also *Nagy v. Nagy*, 210 Cal.App.3d 1262, 1269 (1989) ("Although damages for emotional distress can be recovered in a fraud cause of action, such damages have been allowed only as an aggravation of other damages"). In his interrogatory response, Ward asserts a right to recover both compensatory damages and emotional distress damages as a result of defendants' alleged fraudulent conduct. As discussed, Ward has adduced no evidence that he is entitled to compensatory damages. Given this, he cannot pursue a claim for emotional distress damages. See *Williams v. Wraxall*, 33 Cal.App.4th 120, 134 n. 2 (1995) ("We observe, too, that damages for emotional distress may be recovered in fraud or deceit actions only as an aggravation of other damage, which, we have concluded, respondent did not prove"). As a result, Ward's claim for emotional distress damages flowing from defendants' purported fraud fails as a matter of law.

### 2.      Emotional Distress Resulting from Violations of Ward's Right of Publicity

"One whose right of privacy is unlawfully invaded is entitled to recover substantial damages, although the only damages suffered by him resulted from mental anguish." *Fairfield v. American Photocopy etc. Co.*, 138 Cal.App.2d 82, 89 (1986); *see also Miller*, 187 Cal.App.3d at 1484 ("[D]amages flowing from [invasion of privacy] logically . . . include an award for mental suffering and anguish"); *see also Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1103 (9th Cir. 1992) ("[I]t is quite possible that the appropriation of the identity of a celebrity may induce humiliation, embarrassment, and mental distress"). To prove emotional distress damages, a plaintiff must adduce evidence of "anxiety, embarrassment, humiliation, shame, depression, feelings of

powerlessness, anguish, etc." *Miller*, 187 Cal.App.3d at 1485.

Defendants contend that Ward's claim for emotional distress damages resulting from the purported invasion of his right of publicity fails, because he failed to allege emotional distress damages in the amended complaint and has adduced no evidence of emotional or mental distress.[36] As noted above, Ward's complaint contains no specific allegations regarding emotional distress. In his claim for violation of his right of publicity, the complaint states only that "[t]he Plaintiff is entitled to monetary damages in an amount to be determined at trial."[37]  In his general prayer for relief, Ward requests that the court "[a]ward the Plaintiff actual damages in an amount to be determined at trial."[38]

As noted earlier, the fact that Ward's complaint pleads only general damages is not fatal to his prayer for emotional distress damages.  See *Smolinski*, 2012 WL 2885175 at *3 (stating that emotional distress damages "need not be pled with specificity to make out a plausible case that he is entitled to relief").  In combination with Ward's pleading of general damages, the facts alleged – namely, that defendants appropriated Ward's image without his consent and used it on a product with a negative reputation[39] – give rise to a plausible inference that he suffered emotional distress, humiliation or embarrassment.  See *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1103 (9th Cir. 1992) ("[I]t is quite possible that the appropriation of the identity of a celebrity may induce humiliation, embarrassment, and mental distress").  Because a plaintiff "is not required to plead his actual damages with specificity," *Smolinksi*, 2012 WL 2885175 at *4, Ward has met his pleading burden.

Defendants next assert that, even if adequately alleged, Ward has failed to adduce evidence that he suffered any cognizable emotional or mental anguish as a result of their conduct.  The

---

[36]Motion at 15.

[37]Amended Complaint, ¶ 152.

[38]FAC at 24.

[39]*Id.*, ¶¶ 113, 151.

court disagrees.  Ward testified to his emotional distress during his deposition on June 7, 2011.[40]  Specifically, he mentioned two occasions on which defendants' conduct made him "angry" or "pissed off."[41]  While it is unclear from the record the full context in which these statements were made, or how long Ward remained angry, the testimony reveals that Ward suffered mental distress to some degree.  Under California law, "[t]he amount and severity of damages for emotional distress is a question of fact for the jury to decide."  *Abelson v. National Union Fire Ins. Co.*, 28 Cal.App.4th 776, 789 (1994).

During his deposition, Ward also made the following statement:

"So, I don't mean to be combative, but at this point I am.  It's one of the things that's an emotional situation, as opposed to solely legal.  It's not like he stole my computer with nothing on it.  He stole my face."[42]

This testimony reflects Ward's emotional response to the fact that defendants used his likeness in the board game.  The fact that defendants "stole [his] face" was an "emotional situation" for him.  Whether Ward's statement is credible, and how severe his resulting emotional distress was, are questions that must be determined by a trier of fact.  See *Abelson*, 28 Cal.App.4th at 789.

Defendants argue that Ward's testimony does not demonstrate the level of "anxiety, embarrassment, humiliation, shame, depression, feelings of powerlessness, [or] anguish" necessary to prove an entitlement to emotional distress damages.[43]  As the court noted in *Miller*, however, these "elements of emotional distress damages . . . [are] *subjects of legitimate inquiry by a jury* in the action before us, taking into account all of the consequences and events which flowed from the actionable wrong."  187 Cal.App.3d at 1485 (emphasis added).  Whether a jury

---

[40]Newman Decl., Exh. 8.

[41]*Id.* at 158:3-4 ("Q: What did you say?  A: I was angry, I was pissed off"); see also *id.* at 163:7-8 ("Q: What did you say to your dad?  A: I was angry").

[42]*Id.* at 202:3-203:8.

[43]Reply at 17 (citing *Miller*, 187 Cal.App.3d at 1485).

will believe Ward's testimony regarding his distress, or whether it will find that he has suffered cognizable harm, are questions of fact that are not appropriate for decision at the summary judgment stage.  By offering testimony of his emotional state subsequent to defendants' alleged wrongdoing, Ward has adduced sufficient evidence regarding his purported mental distress damages to raise triable issues of fact.[44]

Ward has also proffered a declaration that details the emotional distress he suffered.[45]  He states:

> "Clearly, I, as any normal person in their right mind would be, am hurt and disgusted by the act of fraud the Defendants have perpetrated against me, their cavalier violation of my ownership rights to my OWN FACE, and their disregard for any and all moral values or standard business ethics."[46]

He further states:

> "They have stolen my image, my time and my joy from the Holidays.  Every year, during Thanksgiving and Christmas, whe[n] everyone else gets to forget their problems and enjoy the kindness of family and friends, I am constantly reminded of being legally defiled and debased."[47]

Finally, Ward asserts:

> "The Defendants' conduct has also caused me to suffer depression.  Knowing that somebody stole my photograph, my very face, for their own profit and will suffer

---

[44]Defendants argue that during his deposition Ward was specifically asked to identify the damages he suffered, and he failed to mention emotional distress. (Raygor Decl., Exh. E, 203:2-4 (**"**Q: What are your damages in this case?  A: My reputation, my ownership, being defrauded**"**).)  To meet their burden of showing that there are no triable issues of fact, defendants cannot cherry pick isolated statements from a deposition.  As noted, Ward's full testimony provides evidence of mental distress sufficient to raise fact questions for the jury.

[45]Declaration of Zack Ward ("Ward Decl."), Docket No. 131 (Oct. 9, 2012), ¶¶ 29-40.

[46]*Id.*, ¶ 29.

[47]*Id.*, ¶ 32.

1    absolutely no punishment for their conduct unless I tirelessly continue to pursue this

2    matter has been soul crushing."[48]

3    Each of these statements is evidence that Ward has suffered emotional distress as a result

4    of defendants' purported violation of his right to publicity; the statements identify clear mental and

5    emotional symptoms linked to defendants' conduct.  Defendants do not dispute that Ward's

6    affidavit contains adequate evidence of emotional distress to defeat summary judgment; rather,

7    they contend that the declaration is a "sham affidavit" that cannot be used to raise triable issues

8    of fact.[49]  Where a party opposing summary judgment proffers a declaration that contradicts or

9    seeks to explain earlier deposition testimony, the court must make a factual determination as to

10    whether the declaration is an attempt to create a "sham" issue of fact and avoid summary

11    judgment.  If it makes such a finding, the declaration cannot be considered in ruling on the

12    opposing party's motion.  *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir.

13    1991) (limiting the rule first articulated in *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540,

14    543-44 (9th Cir. 1975)).  An affidavit is not a sham if: (1) it "merely elaborat[es] upon, explain[s]

15    or clarif[ies] prior testimony," *Messnick v. Horizon Industries, Inc.*, 62 F.3d 1227, 1231 (9th Cir.

16    1995); (2) if "the witness was confused at that time of the earlier testimony and provides an

17    explanation for the confusion," *Pacific Ins. Co. v. Kent*, 120 F.Supp.2d 1205, 1213 (C.D. Cal.

18    2000) (citing *Kennedy*, 952 F.2d at 266); or (3) if the declaration concerns newly discovered

19    evidence, *id.*  See also *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009)

20    ("the inconsistency between a party's deposition testimony and subsequent affidavit must be clear

21    and unambiguous to justify striking the affidavit"); *id.* at 999 ("minor inconsistencies that result

22    from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding

23    an opposition affidavit"); *Kennedy*, 952 F.2d at 267 (before testimony is designated "sham," it

24    must "flatly contradict[ ] earlier testimony").

25    Ward's declaration does not contradict his deposition testimony.  As noted, Ward testified

26

27    [48]*Id.*, ¶ 34.

28    [49]Reply at 18.

16

during his deposition that he had an emotional response to defendants' use of his image, and that and he felt "angry" and "pissed off" about their conduct.  That testimony is consistent with the statements in his declaration, in which he expresses "feelings of humiliation and anger."[50] Similarly, Ward's deposition testimony that he had an emotional response to defendants "stealing his face" is consistent with the statement in his declaration that "[k]nowing that somebody stole my photograph, my very face, for their own profit . . . has been soul crushing."[51]  Ultimately, Ward's declaration "elaborates upon" his earlier testimony; it does not contradict it.  As a result, the court cannot find that it is a sham declaration.

In sum, Ward's deposition testimony and his declaration provide adequate evidence of emotional distress to raise triable issues of fact regarding the existence and extent of his emotional injuries.  Defendants' motion for summary judgment on Ward's claim that he is entitled to recover emotional distress damages on his violation of the right of publicity claim is therefore denied.

**D.      Whether Defendants are Entitled to Summary Judgment on Ward's Prayer for Attorneys' Fees**

Defendants next contend that Ward's prayer for attorneys' fees fails as a matter of law.[52] Ward's attorneys' fees claim is based on the indemnity provision set forth in Section 7 of the parties' License Agreement.[53]  Section 7 states:

> "[NECA] shall indemnify and hold Zack Ward, his employees, attorney, auditors and agents harmless from and against all claims, demands, obligations, causes of action, liabilities and expenses (including attorney's fees) and damages arising out of or relating to (i) any alleged defects in the Authorized Product or (ii) any breach by [NECA] of any agreement made hereunder.  [Ward] shall give [NECA] prompt

---

[50]Ward Decl., ¶ 29.

[51]*Id.*, ¶ 34.

[52]Motion at 20.

[53]Opposition at 6-7.

1   written notice of any such claim, demand or cause of action and [NECA] shall have

2   the right to participate in the defense thereof."

3   "An indemnity agreement is to be interpreted according to the language and contents of the

4   contract, as well as the intention of the parties as indicated by the contract, using the same rules

5   that govern the interpretation of other contracts." See *Widson v. International Harvester Co.*, 153

6   Cal.App.3d 45, 59 (1984). Defendants contend that the language of this provision demonstrates

7   that it is an indemnity agreement pursuant to which they agreed to pay Ward's attorneys' fees if

8   he was sued by third parties.[54] Ward, conversely, contends that the absence of such terms as

9   "obligations," "liabilities," and "expenses (including attorney's fees)" from the second sentence

10  of Section 7 implies that the section is not only an indemnity agreement but a general attorneys'

11  fee provision as well. Ward's argument is unavailing. The clear language of Section 7

12  demonstrates that Ward is entitled to attorneys' fees only if a third party brings an action against

13  him for a defect in the authorized product or a breach by NECA of any subsequent contract into

14  which the parties enter pursuant to the terms of the licensing agreement. The exclusion of

15  "obligations," "liabilities," and "expenses (including attorney's fees)" does not change this fact.

16  An attorneys' fee provision in an indemnity agreement does not provide a general right to

17  attorneys' fees in an action between the parties to enforce the contract. See *Carr Business*

18  *Enterprises, Inc. v. City of Chowchilla*, 166 Cal.App.4th 14, 20 (2008) ("Generally, the inclusion

19  of attorney fees as an item of loss in a third-party claim-indemnity provision does not constitute

20  a provision for the award of attorney fees in an action on the contract"); *Southern Pacific Thrift*

21  *& Loan Assn. v. Savings Assn. Mortgage Co.*, 70 Cal.App.4th 634, 642-43 (1999) ("A provision

22  including attorney fees as an item of loss in an indemnity clause is not a provision for attorney fees

23  in an action to enforce the contract. Accordingly, such a contractual indemnity provision is not

24  made reciprocal and applicable to the entire contract"). Consequently, the License Agreement

25  does not confer on Ward a right to collect attorneys' fees for an action to enforce the agreement

26  itself. Defendants are therefore entitled to summary judgment on Ward's prayer for attorneys'

27

28  [54]*Id.* at 22.

fees.

**E.    Whether Defendants are Entitled to Summary Judgment on Plaintiff's Claim for Audit Costs**

In his third supplemental response to defendants' interrogatory requesting damage calculations, Ward asserted a right to recover audit costs on his breach of contract claim.[55] Section 5 of the Licensing Agreement states that Ward "shall have the right to inspect [NECA's] books. . . .  If an audit is performed, and a discrepancy of more than 5% is found in Zack Ward's favor, then NECA will pay reasonable 3rd party costs."[56]  Ward's amended complaint contains no allegations about this provision, and he has adduced no evidence as to whether an outside auditor was retained or whether he incurred audit expenses.   Ward also failed to oppose defendants' motion for summary judgment on this aspect of his damages claim, thereby abandoning his right to seek such damages. See *Bolbol v. City of Daly City*, 754 F.Supp.2d 1095, 1115 (N.D. Cal. 2010) ("[P]laintiff fails to address this issue in her opposition brief and apparently concedes that she may not proceed on this claim.   Accordingly, the court grants summary judgment in favor of defendants as to this claim"); *Ankele v. Hambrick*, 286 F.Supp.2d 485, 496 (E.D. Pa. 2003) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it. Therefore, summary judgment is appropriate").  Given Ward's failure to allege or adduce any evidence of audit costs incurred, and given his failure to respond to defendants' motion concerning the claim, the court grants defendants' motion for summary judgment on Ward's claim for audit costs.

---

[55]Raygor Decl., Exh. K.

[56]Ward Decl., Exh. 2.

19

### III.  CONCLUSION

For the reasons stated, defendants' motion for partial summary judgment on Ward's prayer for compensatory damages on his Civil Code §§ 1709-1710 and common law fraud actions, his claimed entitlement to emotional distress damages on his fraud claims, his attorneys' fees prayer, and his prayer for audit costs is granted.  Defendants' motion for partial summary judgment on Ward's claim for emotional distress damages on his violation of the right of publicity claim is denied.

DATED: October 29, 2012

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE