1  SHEPPARD MULLIN RICHTER & HAMPTON LLP
   KENT R. RAYGOR, Cal. Bar No. 117224
2  BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
   1901 Avenue of the Stars, Suite 1600
3  Los Angeles, California  90067-6017
   Telephone:  (310) 228-3700
4  Facsimile:  (310) 228-3701
   E-Mail:      kraygor@sheppardmullin.com
5              baigboboh@sheppardmullin.com

6  Attorneys for Defendants
   NATIONAL ENTERTAINMENT
7  COLLECTIBLES ASSOCIATION, INC. and
   JOEL WEINSHANKER

8

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                 WESTERN DIVISION

12
   ZACK WARD,                          Case No. 2:11-CV-6358 MMM (CWx)
13
            Plaintiff,                 **DEFENDANTS' MEMORANDUM OF**
14                                     **CONTENTIONS OF FACT AND LAW**
         v.                            **[L.R. 16-4]**
15
   NATIONAL ENTERTAINMENT
16 COLLECTABLES ASSOCIATION,
   INC., and JOEL WEINSHANKER,
17                                     FAC Filed:  May 5, 2011
            Defendants.               Fact Discovery Cut-Off: Aug. 3, 2012
18                                     Pre-Trial Conference:  Dec. 10, 2012
                                       Trial:  Jan. 18, 2013
19

20

21

22

23

24

25

26

27

28

SMRH:407219192.7                      -1-

Pursuant to L.R. 16-4, Defendants National Entertainment Collectibles Association, Inc. and Joel Weinshanker (collectively, "**Defendants**") submit this *Memorandum of Contentions of Fact and Law*.

## I.

## <u>INTRODUCTION</u>

Almost the entirety of Plaintiff Zack Ward's (**"Plaintiff"**) suit against Defendants, filed more than two and a half years ago in the District Court for the District of New Jersey, relates to the use of two "images" or "photographs":[1]

| IMAGE | DESCRIPTION |
|---|---|
|  (actual size) | A thumbnail—less than ½" × ½" in size—of Plaintiff's portrayal of "Scut Farkus," a subsidiary character in the film *A Christmas Story*, that appears on the back of the box of the *A Christmas Story* board game (the "**Board Game**").  Only one such image appears on the outside of the box.  While the same image appears on some "Question Deck" cards inside the box, the game box was shrink-wrapped, meaning that consumers could not see any of the contents at the point of purchase, and instead could only see the image on the back of the box if they happened to look at the back of the box closely enough to be able to see that tiny image. |

---

[1]  According to Plaintiff, the "gravamen" of the *Amended Complaint* is the board game (the "**Board Game**").  [ECF Docket No. 37, at ¶ 37.]  Therefore, the Board Game will be the focus of Defendants' *Memorandum of Contentions of Fact and Law*.

|  | An image appearing on some "Game Deck" cards included inside the shrink-wrapped board game box.  [*Id.*] |
|---|---|

Plaintiff is seeking $1.2 million in mental and emotional distress, $4.5 million in punitive damages, and an indeterminate amount of costs.

## II.
## STATEMENT OF MATERIAL FACTS

### A.   The Parties.

Plaintiff is an actor residing in Los Angeles, California.  Defendant National Entertainment Collectibles Association, Inc. ("**NECA**") is a New Jersey corporation with its principal place of business in Hillside, New Jersey.  NECA is engaged in the business of selling merchandise and memorabilia based on film, television, video game, music and other properties.  Defendant Joel Weinshanker ("**Weinshanker**") is an officer of NECA.

### B.   Plaintiff's Role In "A Christmas Story" in 1983.

In or around 1983, at the age of thirteen, Plaintiff was cast to play the subsidiary bully character named "Scut Farkus" in the 1983 film, *A Christmas Story* (the "**Film**").  To facilitate his appearance, Plaintiff's mother, Mrs. Pam Hyatt, entered into a *Performer Contract for Independent Production* and *Parental Agreement* (collectively, the "**Actor Agreements**") with the Film's producer,

-3-

Christmas Tree Films Inc.  The Actor Agreements are silent with respect to the right to use Plaintiff's name, likeness, or persona for merchandise or other products based on the Film.

**C.**     **NECA Obtains The Right To Produce Merchandise Based On The Film.**

In 2003, NECA entered into a *Product License* with Warner Bros. Consumer Products, whereby NECA was authorized was to sell various merchandise based on the Film.  In 2005, the parties amended the *Product License* and NECA received the right to also produce and sell board games based on the Film.

**D.**     **Plaintiff And NECA Enter A Merchandise License Agreement For The Film.**

At some point after the 2005 amendment of the *Product License*, but in no event later than October 27, 2006, Weinshanker contacted Plaintiff on NECA's behalf to secure the right to use his likeness.  Plaintiff alleges that Weinshanker contacted him via telephone in October 2006 to obtain his approval for a "Scut Farkus" action figure to be sold by NECA.  Defendant Joel Weinshanker, on the other hand, testified that he obtained Plaintiff's rights to produce and sell merchandise using Plaintiff's character's image much earlier, during a late 2005 or early 2006 conversation concerning obtaining the right to use Plaintiff's  likeness and photograph.

Regardless of when the first contact was, Plaintiff and NECA entered a *License Agreement* dated as of October 1, 2006 (the "*License Agreement*"). Pursuant to the terms of the *License Agreement*, NECA was entitled to sell "**All**

-4-

1    **Consumer Products**" bearing Plaintiff's "names, photographs, likenesses, symbols,

2    emblems and designs", in exchange for a royalty of 2% of NECA's net profits from

3    any such product.  The *License Agreement* also provides that "[t]he parties

4    heretofore acknowledge that this agreement sets forth the entire agreement between

5    [Plaintiff] and [NECA] with respect to the subject matter hereof . . .", and that

6    California law governs.

7

8    **E.     The "Scut Farkus" Products.**

9

10   NECA produced an action figure based on the "Scut Farkus" character (the

11   "**Action Figure**"), which was sold individually as well as part of a boxed set.

12   NECA also produced a board game based on the Film (the "**Board Game**").  [The

13   front and sides of the Board Game do not include any use of Plaintiff's name, image

14   or likeness:[2]



22   There is a tiny, partially obscured, ⅜" x ⅜" thumbnail image of part of Plaintiff's

23   face in his portrayal of the subsidiary character, "Scut Farkus," appearing on the

24   ***back*** of the box, which is the only part of the Board Game that a consumer would

25   see in buying or considering            whether to buy the game:         (Actual size.)

26   That tiny obscured image—which is essentially what this whole lawsuit is over—

27   _____

28   [2]  The image on the cover of the Board Game is of the main character in the Film,
     "Ralphie," played by Peter Billingsley.

1   appears in the upper left-hand corner of the bottom-most of the array of rectangular

2   playing cards on the back of the box, and comprises only .0355% of the surface area

3   of the box:[3]



14   The tiny image of part of the face of the "Scut Farkus" character on the back of the

15   box is just one of 11 character images (of 5 separate characters) on the box.[4]

17          The same partial image that appears on the back of the box also appears on

18   some of the "Question Deck" cards inside the box.  A nearly identical

19   image (but with the face less obscured) also appears on some of the

20   "Game Deck" cards inside the box:

_____

[3]  The entire surface area of the box totals 396.125 square inches:
      Front and back:      13.25"W × 11.25"H × 2 = 298.125 sq. in.
      Two long sides:      13.25"W × 2.00"H × 2 = 53.00 sq. in.
      Two short sides:     11.25"W × 2.00"H × 2 = 45.00 sq. in.
The partial image of the "Scut Farkus" character's face only comprises .0355% of
that surface area:
      ⅜" × ⅜" = .375" × .375" = .140625 sq. in.
      140625 sq. in. ÷ 396.125 sq. in. × 100 = .0355% of the Board Game surface
      area

[4]  This number excludes any characters depicted in the photograph of the Board
Game playing board that is included on the back of the box.

Those are the only two images of Plaintiff portraying the subsidiary character "Scut Farkus" used in connection with the Board Game.

**F.     Plaintiff Files Suit.**

On July 3, 2010, Plaintiff filed this action in the United States District Court for the District of New Jersey, asserting 5 claims for relief.  On May 5, 2011, Plaintiff filed an *Amended Complaint*, asserting new claims based on the alleged manufacture and sale of the Board Games.  Plaintiff asserts 6 claims for relief against Defendants in the *Amended Complaint*:  (1) fraud; (2) common law fraud; (3) false designation of origin [LANHAM ACT, 15 U.S.C. § 1125(a)]; (4) misappropriation of likeness [CAL. CIV. CODE § 3344]; (5) common law right to publicity; and (6) breach of contract.  [*Id.*]  Plaintiff is seeking more than *$6 million* in damages for the minimal use described herein.

**III.**

**LEGAL BRIEF [L.R. 16-4.1]**

**A.     Summary Of Plaintiff's Claims [L.R. 16-4.1(a)].**

Claim 1:     Defendants defrauded Plaintiff by (a) failing to disclose existence of the Board Game when Weinshanker contact Plaintiff to discuss the *License Agreement*; and (b) entering into the *License Agreement* with no intent to perform.

-7-

Claim 2:     Defendants defrauded Plaintiff by (a) failing to disclose existence of the Board Game when Weinshanker contacted Plaintiff to discuss the *License Agreement*; and (b) entering into the *License Agreement* with no intent to perform.

Claim 3:     NECA used Plaintiff's likeness and photograph without his consent in a way that was like to cause confusion, mistake or deceive as to the affiliation, connection or association of Plaintiff to the various products incorporating Plaintiff's likeness in his portrayal of the character "Scut Farkus."

Claim 4:     NECA used Plaintiff's likeness and photograph to sell (a) the Board Game without Plaintiff's knowledge and consent, and (b) the Action Figure (and box set) with his knowledge, but without his consent.

Claim 5:     NECA used Plaintiff's likeness and photograph to sell (a) the Board Game without Plaintiff's knowledge and consent, and (b) the Action Figure (and box set) with his knowledge, but without his consent.

Claim 6:     NECA breached the *License Agreement* by failing to pay royalties and accounting to Plaintiff.

**B.     Elements Necessary To Establish Plaintiff's Claims [L.R. 16.4.1(b)].**

**Elements Necessary To Establish Plaintiff's Claim For Fraud**

1.     Defendants failed to disclose an important fact that they knew or believed to be true;

2.      Defendants were under a duty to disclose the fact to Plaintiff;

3.      Defendants acted with intent to cause Plaintiff to enter into the contract;

4.      Plaintiff was unaware of the fact and would not otherwise have entered into the contract.

*See* 1-3G CALIFORNIA FORMS OF JURY INSTRUCTION MB300G.42 (2012); Civ. Code § 1572; *Goodman v. Kennedy*, 18 Cal.3d 335, 346-48 (1976).

## Elements Necessary To Establish Plaintiff's Claim For Common Law Fraud.

1.      Defendants failed to disclose an important fact that they knew or believed to be true;

2.      Defendants were under a duty to disclose the fact to Plaintiff;

3.      Defendants acted with intent to cause Plaintiff to enter into the contract;

4.      That Plaintiff was unaware of the fact and would not otherwise have entered into the contract.

*See* 1-3G CALIFORNIA FORMS OF JURY INSTRUCTION MB300G.42 (2012); Civ. Code § 1572; *Goodman v. Kennedy*, 18 Cal.3d 335, 346-48 (1976).

## Elements Necessary To Establish Plaintiff's Claim False Designation Of Origin

1.      That Plaintiff's image, likeness, and/or photograph is a valid, protectable trademark;[5]

2.      Plaintiff owns this trademark;

3.      NECA used Plaintiff's valid mark, or related marks in the United States without the consent of the Plaintiff in a manner that is likely to cause confusion among ordinary purchasers as to the source of the goods; and

4.      Plaintiff was damaged by NECA's infringement.

*See* Ninth Circuit Model Civil Jury Instructions 15.1, 15.5 (2007); 15 U.S.C. § 1125(a).

## Elements Necessary To Establish Plaintiff's Claim For Misappropriation Of Likeness

1.      NECA knowingly used Plaintiff's likeness and/or photograph on merchandise;

2.      The use did not occur in connection with a news, public affairs, or sports broadcast or account, or with a political campaign;

---

[5]  A trademark is any word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods, even if that source is generally unknown;

1         3.      NECA did not have Plaintiff's consent;

2

3         4.      NECA's use of Plaintiff's likeness and photograph was directly

4 connected to Defendant National Entertainment Collectibles Association, Inc.'s

5 commercial purpose;

6

7         5.      Plaintiff was harmed;

8

9         6.      NECA's conduct was a substantial factor in causing Plaintiff's harm;

10 and

11

12         7.      Plaintiff's likeness or photograph was "readily identifiable."

13

14      *See* 1-18 CALIFORNIA FORMS OF JURY INSTRUCTION 1804A (2012).  *See also*

15 *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998); J. THOMAS

16 MCCARTHY, THE RIGHTS OF PUBLICITY & PRIVACY § 4:49.

17

18 **Elements Necessary To Establish Plaintiff's Claim Common Law Right**

19 **Of Publicity**

20

21         1.      NECA used Plaintiff's likeness without Plaintiff's permission;

22

23         2.      NECA gained a commercial benefit by using Plaintiff's likeness or

24 identity;

25

26         3.      Plaintiff was harmed;

27

28

4.      NECA's conduct was a substantial factor in causing Plaintiff's harm; and

5.      That the privacy interests of Plaintiff outweigh the public interest served by NECA's use of Plaintiff's likeness.

*See* 1-18 CALIFORNIA FORMS OF JURY INSTRUCTION 1803 (2012).

## Elements Necessary To Establish Plaintiff's Claim For Breach Of Contract

1.      Plaintiff and NECA entered into a contract;

2.      Plaintiff did all, or substantially all, of the significant things that the contract required him to do;

3.      All conditions required by the contract for NECA's performance had occurred;

4.      NECA failed to do something that the contract required it to do; and

5.      Plaintiff was harmed by that failure.

*See* 1-19 CALIFORNIA FORMS OF JURY INSTRUCTION 303 (2011).

**C.   Key Evidence In Opposition To Plaintiff's Claims [L.R. 16-4.1(c)].[6]**

     **1.   Key Evidence In Opposition To Plaintiff's Claim For Fraud.**

     Plaintiff has no evidence to state a claim for fraud.  Defendant Joel Weinshanker will testify that he had a conversation with Plaintiff in late 2005 or early 2006 wherein NECA obtained the right to produce and sell merchandising using Plaintiff's character, Scut Farkus's, image.  Weinshanker will also testify that there was no mention of any limits on NECA's use of the "Scut Farkus" image.

     Among other evidence, Defendants intend to rely on the *License Agreement*, signed by Plaintiff, which provides that NECA was entitled to sell "All Consumer Products" bearing Plaintiff's "names, photographs, likenesses, symbols, emblems, and designs" in exchange for a royalty of 2% of NECA's products.  The *License Agreement* also contains an integration clause, which provides that "[t]he parties heretofore acknowledge that this agreement sets forth the entire agreement between you and us with respect to the subject matter hereof and shall not be modified except by the execution of a written instrument signed by all parties."  Defendants will also rely on Plaintiff's repeated admissions, including in Plaintiff's Response to Interrogatory No. 16, that the *License Agreement* "authorizes Defendants [*sic*] to manufacture, distribute, vend and sell products bearing the name, photograph and likeness of the Plaintiff."

     **2.   Key Evidence In Opposition To Plaintiff's Claim For Common Law Fraud.**

---

[6] Defendants are still preparing their case and may identify additional evidence in advance of trial.  Defendants' statements herein are not intended to limit their ability to introduce evidence not identified herein at trial.

-13-

Plaintiff has no evidence to state a claim for fraud.  Defendant Joel Weinshanker will testify that he had a conversation with Plaintiff in late 2005 or early 2006 wherein NECA obtained the right to produce and sell merchandising using images of Plaintiff's portrayal of the subsidiary character, Scut Farkus.  Weinshanker will also testify that there was no mention of any limits on NECA's use of the "Scut Farkus" image.

Among other evidence, Defendants intend to rely on the *License Agreement*, signed by Plaintiff, which provides that NECA was entitled to sell "All Consumer Products" bearing Plaintiff's "names, photographs, likenesses, symbols, emblems, and designs" in exchange for a royalty of 2% of NECA's products.  The *License Agreement* also contains an integration clause, which provides that "[t]he parties heretofore acknowledge that this agreement sets forth the entire agreement between you and us with respect to the subject matter hereof and shall not be modified except by the execution of a written instrument signed by all parties."  Defendants will also rely on Plaintiff's repeated admissions, including in Plaintiff's Response to Interrogatory No. 16, that the *License Agreement* "authorizes Defendants [*sic*] to manufacture, distribute, vend and sell products bearing the name, photograph and likeness of the Plaintiff."

### 3.   Key Evidence In Opposition To Plaintiff's Claim For False Designation Of Origin.

Plaintiff has no evidence to state a claim for false designation of origin.  Specifically, Plaintiff has not introduced any evidence or expert testimony regarding the likelihood of confusion with respect to the partial image of "Scut Farkus" on the back of the board game.  Indeed, Plaintiff's expert only testified as to damages.

-14-

Furthermore, Plaintiff likeness is not readily identifiable in the board game in this case.

### 4.    Key Evidence In Opposition To Plaintiff's Claim For Misappropriation Of Likeness.

Plaintiff has no evidence to state a claim for misappropriation of likeness. Defendant Joel Weinshanker will testify that he had a conversation with Plaintiff in late 2005 or early 2006 wherein NECA obtained the right to produce and sell merchandising using Plaintiff's character, Scut Farkus's, image.  Weinshanker will also testify that there was no mention of any limits on NECA's use of the "Scut Farkus" image.

Among other evidence, Defendants intend to rely on the *License Agreement*, signed by Plaintiff, which provides that NECA was entitled to sell "All Consumer Products" bearing Plaintiff's "names, photographs, likenesses, symbols, emblems, and designs" in exchange for a royalty of 2% of NECA's products.  The License Agreement also contains an integration clause, which provides that "[t]he parties heretofore acknowledge that this agreement sets forth the entire agreement between you and us with respect to the subject matter hereof and shall not be modified except by the execution of a written instrument signed by all parties."  Defendants will also rely on Plaintiff's repeated admissions, including in Plaintiff's Response to Interrogatory No. 16, that the License Agreement "authorizes Defendants [sic] to manufacture, distribute, vend and sell products bearing the name, photograph and likeness of the Plaintiff."

### 5.    Key Evidence In Opposition To Plaintiff's Claim For Common Law Right Of Publicity.

Plaintiff has no evidence to state a claim for common law right of publicity. Defendant Joel Weinshanker will testify that he had a conversation with Plaintiff in late 2005 or early 2006 wherein NECA obtained the right to produce and sell merchandising using Plaintiff's character, Scut Farkus's, image.  Weinshanker will also testify that there was no mention of any limits on NECA's use of the "Scut Farkus" image.

Among other evidence, Defendants intend to rely on the *License Agreement*, signed by Plaintiff, which provides that NECA was entitled to sell "All Consumer Products" bearing Plaintiff's "names, photographs, likenesses, symbols, emblems, and designs" in exchange for a royalty of 2% of NECA's products.  The *License Agreement* also contains an integration clause, which provides that "[t]he parties heretofore acknowledge that this agreement sets forth the entire agreement between you and us with respect to the subject matter hereof and shall not be modified except by the execution of a written instrument signed by all parties."  Defendants will also rely on Plaintiff's repeated admissions, including in Plaintiff's Response to Interrogatory No. 16, that the *License Agreement* "authorizes Defendants [sic] to manufacture, distribute, vend and sell products bearing the name, photograph and likeness of the Plaintiff."

## 6.   Key Evidence In Opposition To Plaintiff's Claim For Breach Of Contract.

Plaintiff has no evidence to support a claim for breach of contract.  Among other evidence, Defendant Joel Weinshanker will testify that Plaintiff failed to provide the necessary information for payment of royalties.

**D.     Summary Of Defendants' Affirmative Defenses [L.R. 16-4.1(d)].**

First Affirmative Defense:     Plaintiff's claims for fraud, common law fraud, false designation of origin, misappropriation of likeness and common law right of publicity are barred by the doctrine of statute of limitations set forth in CALIFORNIA CODE OF CIVIL PROCEDURE §§ 338, 339, 340 and any other statute of limitations that may be found to apply.

Second Affirmative Defense:     Plaintiff's claim for breach of contract is barred by the doctrine of waiver because Plaintiff failed to provide information necessary for Defendant National Entertainment Collectibles Association, Inc. to perform.

Third Affirmative Defense:     Plaintiff's claims are barred because Plaintiff acquiesced to the conduct complained of in the *Amended Complaint*.

Fourth Affirmative Defense:     Plaintiff's claims are barred by the doctrine of laches because he unreasonably delayed in asserting them, without justification, which unreasonable delay prejudiced Defendants.

Fifth Affirmative Defense:     Plaintiff's claims are barred by the doctrine of unclean hands because of Plaintiffs inequitable conduct towards Defendants.

Sixth Affirmative Defense:     Plaintiff's claims for fraud, common law fraud, false designation of origin, misappropriation of likeness and common law right of publicity are barred because, at all times relevant to this action, Plaintiff granted Defendant a license that expressly governs to conduct about which Plaintiff complains.

1    Seventh Affirmative Defense:   Plaintiff's claims for false designation of
2    origin, misappropriation of likeness and common law right of publicity are barred
3    because any alleged use of any Plaintiffs likeness was *de minimis* or incidental, such
4    that Defendant National Entertainment Collectibles Association, Inc. received no
5    commercial value or benefit from such use.
6
7    Eighth Affirmative Defense:   Plaintiff's claims are barred due to Plaintiff's
8    conduct and/or omissions alleged in the *Amended Complaint*, which constitute a
9    failure to mitigate his alleged damages, in particular by failing to timely seek his
10   remedies under the alleged agreement.
11
12   Ninth Affirmative Defense:   Plaintiff's claims for misappropriation of
13   likeness and common law right of publicity are barred by the First Amendment of
14   the United States Constitution.
15
16   Tenth Affirmative Defense:   Plaintiff is not entitled to an injunction
17   because he has failed to establish that damages, or other remedies at law, are
18   inadequate.
19
20   **E.    Elements Necessary To Establish Defendants' Affirmative**
21   **Defenses [L.R. 16.4-1(e)].**
22
23   **Elements Required to Establish Statute of Limitations**
24
25   **Right of Publicity:**
26
27   1.    NECA first published Plaintiff's likeness or photograph on the Board
28   Game before July 3, 2008; and

-18-

(a)    The first general distribution of the Board Game to the public was before July 3, 2008; or

(b)    Plaintiff was aware of the Board Game before July 3, 2008.

*See*  CALIFORNIA CODE OF CIVIL PROCEDURE § 339; *Yeager v. Bowlin,* 693 F.3d 1076, 1081 (9th Cir. 2012);  *Cusano v. Klein*, 264 F.3d 936, 950 (9th Cir. 2001)*; Christoff v. Nestle USA, Inc.* 47 Cal. 4th 468, 476-477 (2009).

**Fraud:**

1.    Plaintiff's claimed harm occurred before July 3, 2007; and

2.    Plaintiff did not discovery facts constituting the fraud or mistake, and with reasonable diligence could not have discovered those facts prior to July 3, 2007.

*See* 1-19 CALIFORNIA FORMS OF JURY INSTRUCTION 1925 (2012); CALIFORNIA CODE OF CIVIL PROCEDURE § 338(d).

## **Elements Required to Establish Waiver**

1.    Plaintiff knew Defendants were required to obtain certain information necessary for NECA to perform under the *License Agreement*;

2.    Plaintiff freely and knowingly gave up his right to have Defendants perform their obligations under the *License Agreement*; and

3.      Plaintiff deliberately acted so inconsistently with an intent to enforce the right in question that a reasonable person would believe that Plaintiff had relinquished that right.

*See* 1-3 CALIFORNIA FORMS OF JURY INSTRUCTION 336 (2012).

## **Elements Required to Establish Acquiescence**

1.      Plaintiff actively represented or led the Defendants to believe that he would not assert a right or a claim against Defendants;

2.      The delay between the active representation and assertion of the right or claim was not excusable; and

3.      The delay caused the Defendants undue prejudice.

*See Times Mirror Magazines v. Field & Stream*, 294 F.3d 383, 395 (2d Cir. 2001); *Indian WellsDesert European Motorcars, Ltd. v. Desert European Motorcars, Inc.*, 2011 WL 3809933 (C.D. Cal. Aug. 25, 2011).

## **Elements Required to Establish Laches**

1.      Plaintiff unreasonably delayed in bringing this lawsuit;

2.      Either acquiescence in the act about which Plaintiff complains or prejudice to Defendants resulted from the delay.

1    *See* 5-42A CALIFORNIA FORMS OF JURY INSTRUCTION MB4200A.76 (2012);

2    *Holt v. County of Monterey*, 128 Cal. App. 3d 797, 801 (1982).

## Elements Required to Establish Unclean Hands

6    1.    Plaintiff's conduct was inequitable; and

8    2.    Plaintiff's conduct resulted in prejudice to Defendants.

10   *See* 1-3F CALIFORNIA FORMS OF JURY INSTRUCTION MB300F.29 (2012); *Levi*

11   *Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997).

## Elements Required to Establish License

15   1.    Plaintiff and NECA entered into a license agreement, whether written

16   or oral; and

18   2.    Pursuant to that license, NECA was granted the right to use Plaintiff's

19   indicia of his portrayal of the character "Scut Farkus," including his photograph,

20   image and likeness in connection with merchandise based on the film *A Christmas*

21   *Story*.

23   *See*, *e.g.*, *Summit Entm't, LLC v. Beckett Media, LLC*, 2010 U.S. Dist. LEXIS

24   7833, at *5-6 (C.D. Cal. Jan. 12, 2010).

## **Elements Required to Establish *De Minimis* Or Incidental Use**

1.      The use of Plaintiff's photograph, image or likeness was a minimal nature; and

2.      NECA received no commercial value from Plaintiff's photograph, image or likeness.

*See Yeager v. Cingular Wireless LLC*, 627 F. Supp. 2d 1170, 1177 n.8 (E.D. Cal. 2008).

## **Elements Required to Establish Failure to Mitigate Damages**

1.      Plaintiff was required to act with reasonable promptness and in good faith; and

2.      Plaintiff was required to do all that was reasonable under the circumstances to try to avoid or minimize the resulting loss or harm.

*See* 1-3E CALIFORNIA FORMS OF JURY INSTRUCTION MB300E.14 (2012);  *see also Travelers Cas. & Sur. Co. of Am. v. Dunmore,* 2009 WL 1586936 at *7 (E.D. Cal. June 5, 2009).

## **Elements Required to Establish First Amendment**

1.      The Board Game qualifies as protected speech under the U.S. Constitution;

2.     The use of Plaintiff's likeness is artistically relevant to the Board Game; and

3.     The use of Plaintiff's likeness is not explicitly misleading.

*See Brown v. Elecs. Arts, Inc.*, 2009 U.S. Dist. LEXIS 131387 at **9-10 (C.D. Cal. September 23, 2009.)

### Elements Required to Establish Adequate Remedy

1.     Plaintiff has an adequate remedy at law.

*See Abbe v. City of San Diego*, 2007 WL 4146696 at * 18 (S.D. Cal. Nov. 9, 2007).

## F.   Key Evidence In Support Of Defendants' Affirmative Defenses [L.R. 16-4.1(f)][7].

### Key Evidence in Support of Statute of Limitations

Defendants will show that Counts I through V of the *Amended Complaint* are barred, in whole or in part, by the applicable statutes of limitation including, but not limited to, CALIFORNIA CODE OF CIVIL PROCEDURE §§ 338, 339, 340 and any other statute of limitations that may be found to apply.

---

[7] Defendants are still preparing their case and may identify additional evidence in advance of trial.  Defendants' statements herein are not intended to limit their ability to introduce evidence not identified herein at trial.

In the *Amended Complaint*, Plaintiff alleges that Defendants have been using his likeness since at least as early as August 2006.  Plaintiff admits that that the *License Agreement* between Plaintiff and NECA, which authorizes NECA to use Plaintiff's likeness on "All Consumer Products", was entered into by no later than December 20, 2006.

Among other evidence, Defendants intend to show that Plaintiff was aware of the board game at least as early as late 2005 or early 2006.  Defendant Joel Weinshanker will testify that Plaintiff had notice of the board games in late 2005 or early 2006.  Because Plaintiff failed to assert any causes of action related to the board game until five years later, Counts III, IV, and V are barred by CALIFORNIA CODE OF CIVIL PROCEDURE §§ 338, 339, 340 and any other statute of limitations that may be found to apply.

Furthermore, Plaintiff alleges fraud in Counts I and II that occurred at least three years before he filed this action.  Among other evidence, Defendant Joel Weinshanker will testify that Plaintiff obtained knowledge of facts sufficient to place a reasonably prudent person on knowledge of the purported fraud at least three years before Plaintiff filed this action.  Plaintiff's counsel admitted, in a March 19, 2012 conference before this Court, that since as early as the end of 2006, Plaintiff has been on notice of Defendants' purported wrongful conduct, but waited until 2010 to file the current action.  CALIFORNIA CODE OF CIVIL PROCEDURE § 338(d) bars such untimely claims.

## **Key Evidence in Support of Waiver**

Defendants allege that Count VI is barred by the doctrine of waiver because Plaintiff freely and knowingly gave up his right to have NECA perform under the

1  alleged agreement.  Among other evidence, Defendant Joel Weinshanker will testify

2  that Plaintiff repeatedly failed to provide personal information, including, but not

3  limited to, his Social Security number, that Plaintiff knew was necessary for

4  NECA's performance.

6  ## Key Evidence in Support of Acquiescence

8  Defendants allege that the *Amended Complaint* and all claims set forth therein

9  are barred by the affirmative defense of acquiescence.

11  Among other evidence, Defendants intend to rely on the *License Agreement*,

12  signed by Plaintiff, which provides that NECA was entitled to sell "All Consumer

13  Products" bearing Plaintiff's "names, photographs, likenesses, symbols, emblems,

14  and designs" in exchange for a royalty of 2% of NECA's products.  The *License*

15  *Agreement* also contains an integration clause, which provides that "[t]he parties

16  heretofore acknowledge that this agreement sets forth the entire agreement between

17  you and us with respect to the subject matter hereof and shall not be modified except

18  by the execution of a written instrument signed by all parties."  Furthermore,

19  Defendant Joel Weinshanker will testify that sometime in late 2005 or early 2006,

20  Plaintiff, in conversations with Mr. Weinshanker acting on behalf of NECA and in

21  his capacity as an employee and officer of NECA, was put on notice of the

22  purported uses of his likeness, and agreed to those alleged uses by entering into the

23  *License Agreement* with NECA.

25  Mr. Weinshanker will also testify that Plaintiff repeatedly failed to provide

26  personal identification information, including, but not limited to, his Social Security

27  Number, necessary for NECA to perform its purported obligations.

28

## Key Evidence in Support of Laches

The *Amended Complaint* and all claims set forth therein are barred by the doctrine of laches because Plaintiff unreasonably delayed in asserting the claims in the *Amended Complaint*, without satisfactory explanation, which unreasonable delay caused prejudice to Defendants.

Among other evidence, Defendants intend to rely on Plaintiff's counsel admission, in a March 19, 2012 conference before this Court, that since as early as the end of 2006, Plaintiff was on notice of Defendants' purported wrongful conduct, but waited until 2010 to file the current action.  Plaintiff, as set forth in pleadings and discovery responses throughout this action, has failed to provide any satisfactory explanation for this delay.  Defendant Joel Weinshanker will testify that the delay has caused prejudice to Defendants, particularly NECA, which engaged in certain conduct, including production of board games, in part, based on the fact that Plaintiff never complained that he believed Defendants were engaged in any wrongful conduct.

## Key Evidence in Support of Unclean Hands

The *Amended Complaint* and all claims set forth therein are barred by the doctrine of unclean hands because of Plaintiff's inequitable conduct towards Defendants.

Among other evidence, Defendants intend to establish that Plaintiff and his counsel, Randall S. Newman, have engaged in inequitable conduct toward Defendants by improperly relying on documents created for the express purpose of settlement negotiations, and pursuant to the Court's orders for settlement purposes

1   only, in order to try to construct a purported fraud claim against Defendants.

2   Plaintiff and his counsel have used both documents and statements made to facilitate

3   settlement to attempt to establish Defendants' liability, including the royalty

4   statements specifically ordered by the Court for settlement purposes, in clear

5   contravention of FEDERAL RULE OF EVIDENCE 408.  When confronted with this,

6   Plaintiff and his counsel have misstated the facts and obfuscated to establish a fraud

7   claim for which Plaintiff now seeks millions of dollars in punitive damages.

8

9   Defendants intend to rely on the pleadings, discovery responses, and other

10  admissible evidence to establish that Plaintiff's and Plaintiff's counsel's real goal in

11  claiming fraud, however, is to increase the costs and risk associated with this

12  litigation in order to try to force Defendants to pay Plaintiff an exorbitant amount of

13  money in settlement of his contractual and other claims.

14

15  ## Key Evidence in Support of License

16

17  Count I, Count II, Count III, Count IV and Count V the *Amended Complaint*

18  are barred because, at all times relevant to this action, Plaintiff granted NECA an

19  express or implied license, which license expressly governs the conduct about which

20  Plaintiff complains.

21

22  Among other evidence, Defendants intend to rely on the *License Agreement*,

23  signed by Plaintiff, which provides that NECA was entitled to sell "All Consumer

24  Products" bearing Plaintiff's "names, photographs, likenesses, symbols, emblems,

25  and designs" in exchange for a royalty of 2% of NECA's products.  The *License*

26  *Agreement* also contains an integration clause, which provides that "[t]he parties

27  heretofore acknowledge that this agreement sets forth the entire agreement between

28

-27-

you and us with respect to the subject matter hereof and shall not be modified except by the execution of a written instrument signed by all parties."

Finally, Defendants will rely on Plaintiff's Response to Interrogatory No. 16, wherein Plaintiff admits that the *License Agreement* "authorizes Defendants [*sic*] to manufacture, distribute, vend and sell products bearing the name, photograph and likeness of the Plaintiff."

Therefore, at all times relevant to this lawsuit, Plaintiff granted NECA an express or implied license, which license expressly governs the conduct about which Plaintiff complains.

## **Key Evidence in Support of *De Minimis* Or Incidental Use**

Count III, Count IV and Count V of the *Amended Complaint* are barred on the basis that any alleged use of any Plaintiff's likeness was *de minimis* or incidental, such that Defendants received no commercial value or benefit from use of Plaintiff's likeness in connection with the Board Game.

Among other evidence, Defendants will rely on the Board Game itself, in which there is only a ⅜" x ⅜" image of part of the "Scut Farkus" character's face appearing on the back of the Board Game.  The image is the only part of the Board Game in which a consumer would see an image of "Scut Farkus" when buying or considering whether to buy the game**.**  The partial image of the "Scut Farkus" character's face comprises .0355% of that surface area:  (⅜" × ⅜" = .375" × .375" = .140625 sq. in.; 140625 sq. in. ÷ 396.125 sq. in. × 100 = .0355% of the Board Game surface area.)  Furthermore, Defendants will show that the "Scut Farkus" image has almost no commercial value or benefit, as evidenced by the fact that (1) Plaintiff

never licensed his likeness, photograph, and/or image previously; and (2) there are numerous products based on the *A Christmas Story* film in addition to the Board Game.

## Key Evidence in Support of Failure to Mitigate Damages

Defendants allege that the *Amended Complaint* and all claims set forth therein are barred due to Plaintiff's conduct or omissions alleged in the *Amended Complaint* which constitute failure to mitigate his alleged damages.  Among other evidence, Defendants intend to rely on Plaintiff's deposition testimony and discovery responses, which will establish that Plaintiff failed to timely seek his remedies under the *License Agreement.*

## Key Evidence in Support of First Amendment

Count IV and Count V of the *Amended Complaint* are barred by the First Amendment of the United States Constitution because the value of the purported works at issue does not result primarily from Plaintiff's purported fame.

Among other evidence, Defendants intend to rely on the Board Game itself, on which the image of part of the "Scut Farkus" character's face appearing on the back of the box is only ⅜" x ⅜".  The partial image of the "Scut Farkus" character's face comprises only .0355% of the surface area of the Board Game.  Furthermore, Defendants intend to establish that the "Scut Farkus" image has almost no commercial value, as evidenced by the fact that (1) Plaintiff has never licensed his likeness, photograph, and/or image previously; and (2) there are numerous products based on the *A Christmas Story* film in addition to the board games.  Therefore,

1  Defendants intend to establish that NECA received no commercial value or benefit
2  from such use.

3

4  ## Key Evidence in Support of Adequate Remedy

5

6  Plaintiff's prayer for injunctive relief is barred because such relief is
7  inappropriate when other adequate remedies, such as monetary damages, exist and
8  Plaintiff has not alleged that such other remedies are inadequate.

9

10  Among other evidence, Defendants intend to rely on the pleadings, discovery
11  responses, and other admissible evidence to establish that Plaintiff has not produced
12  any evidence supporting his claim that damages are inadequate.  Similarly,
13  Defendants will further establish that Plaintiff will be unable to produce any
14  admissible evidence in trial in support thereof.

15

16  **G.  Evidentiary Issues [L.R. 16-4.1(h)].**

17

18  Plaintiff has filed motions *in limine* in order to:  (1) amend or withdraw his
19  Response to RFA No. 6; (2) exclude expert testimony from Defendants' expert Mark
20  Mostman; (3) exclude parole evidence to modify terms of the *License Agreement*;
21  (4) exclude expert testimony from Defendants' expert Jonathan Faber; and (5)
22  exclude evidence regarding overhead and freight costs.  [ECF Docket Nos. 152-153;
23  155-156; 158.]  On November, 19, 2012 Defendants will file oppositions to
24  Plaintiff's motions *in limine*.

25

26  Defendants have filed motions *in limine* to preclude Plaintiff from:  (1)
27  offering testimony or the report of his designated Robert F. Valerio at trial; (2)
28  offering trial testimony from witnesses not previously disclosed pursuant to FED. R.

-30-

1   Civ. P. 26; (3) offering evidence related to a 2009 calendar based on the film *A*

2   *Christmas Story*; (4) offering unauthenticated, hearsay documentary evidence

3   produced by third parties; (5) offering physical evidence, including physical copies

4   of board games, action figures and box sets, that lacks foundation; (6) offering

5   documents produced by Defendants pursuant to a Court order and as part of

6   settlement proceedings; (7) offering evidence of Defendants' financial condition

7   during the liability phase of trial; (8) offering unauthenticated website printouts; (9)

8   offering evidence of Defendant National Entertainment Collectibles Association,

9   Inc.'s profits; and (10) offering evidence of or referring to Joel Weinshanker as a

10  defendant.  [ECF Docket Nos. 148-151; 154; 157; 160-162.]

11

12  **H.    Issues Of Law [L.R. 16-4.1(i).**

13

14       **1.    Contract Interpretation**

15

16       Under the *License Agreement*, NECA was entitled to sell "All Consumer

17  Products" bearing Plaintiff's "names, photographs, likenesses, symbols, emblems

18  and designs" in connection with *A Christmas Story*.  Defendants intend to establish

19  that the *License Agreement* permits NECA's use of Plaintiff's photograph and/or

20  likeness on the Board Game.  Plaintiff, by contrast, claims that the explicit grant of

21  rights quoted above is somehow limited by other language providing for the use of

22  Plaintiff's "likeness," and that a "likeness" does not include a "photograph," such

23  that Defendants' board game exceeded the scope of the *License Agreement*.

24  Because Plaintiff disputes the terms of the *License Agreement* and the scope of its

25  terms, it is the Court's duty to interpret the *License Agreement* and the terms therein

26  in order to resolve the parties' disputes in this case.

27

28

Contract interpretation is for the Court unless there is a conflict in the extrinsic evidence that is outcome determinative.  *See In re U.S. Fin. Sec. Litig.*, 729 F.2d 628, 631-32 (9th Cir. 1984); *De Guere v. Universal City Studios, Inc.,* 56 Cal. App. 4th 482, 501 (1997)  Plaintiff's interpretation of the *License Agreement* is contrary to the plain meaning of the word "likeness," and therefore, it is the Court's duty to interpret that term.  *See Hill v. State Farm Mutual Automobile Ins. Co.*, 166 Cal. App. 4th 1438, 1472 (2008) ("When interpreting contract provisions, words are given their plain and ordinary meaning and courts should refrain from adopting interpretations resulting in distortions and creating ambiguities where none exist."); *see also Greenwich Ins. Co. v. Media Breakaway, LLC*, 2009 U.S. Dist. LEXIS 63454, at *19 (C.D. Cal. July 22, 2009) ("[A] court should give words their 'plain and ordinary meaning' in construing the language of the contract.") (quoting *St. Paul Mercury Ins. Co. v. Medical Lab Network*, 690 F. Supp. 901, 903 (C.D. Cal. 1988)); *Griffin Dewatering Corp. v. Northern Ins. Co. of New York*, 176 Cal. App. 4th 172, 204 (2009) ("[P]lain language remained (and remains today) an important principle of contract interpretation.").

Application of the "plain and ordinary meaning" of "likeness" makes clear that NECA was granted the right to use Plaintiff's photograph.  *See*, *e.g.*, CAL. CIV. CODE. § 1641; *Am. Alternative Ins.*, 135 Cal. App. 4th at 1245.  Because Plaintiff's new interpretation of the *License Agreement* completely ignores the "plain and ordinary meaning" of "likeness," and the fact that the *License Agreement* explicitly grants NECA the right to use "photographs,"  it leads to "distortions and creat[es] ambiguities where none exist" and should be disregarded.  *Hill*, 166 Cal. App. 4th at 1472.  Further, because any evidence that is inconsistent with the plain meaning of the term "likeness" in the *License Agreement* is inadmissible parole evidence, there is no conflict in the extrinsic evidence that is outcome determinative.  *Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP,* 201 Cal. App. 4th

368, 376 (2011) (defining inadmissible parol evidence as "extrinsic evidence . . . used to contradict or supplement an agreement . . . intended to be a final expression of that agreement . . . .")

## IV.
## BIFURCATION OF ISSUES [L.R. 16-4.3]

In their *Motion in Limine No. 6* filed on November 9, 2012, Defendants requested that the Court bifurcate the trial into liability and punitive damage phases, if necessary.  [ECF Docket No. 157.]

## V.
## JURY TRIAL [L.R. 16-4.3]

Plaintiff has requested a jury trial.  [ECF Docket No. 37 (*Amended Complaint*).]  The following issues are required to be tried by the Court:

1.     Contract Interpretation.  *See In re U.S. Fin. Sec. Litig.*, 729 F.2d 628, 631-32 (9th Cir. 1984); *De Guere v. Universal City Studios, Inc.,* 56 Cal. App. 4th 482, 501 (1997).

2.     Statute of Limitations.  *See Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 831, (1979) (the trial court decided the applicable statute of limitations for the right of publicity).

3.     Attorneys' Fees.  *See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999).

# VI.
# ATTORNEYS' FEES [L.R. 16-4.4]

Attorneys' fees are available pursuant to the California Code of Civil Procedure Section 3344, Lanham Act Section 1117(a), and Federal Rule of Civil Procedure 68.

"California Civil Code Section 3344 requires that a court give attorneys' fees to a prevailing party . . . ." *ANT v. McParlin*, 2010 WL 4572690 at * 2 (C.D. Cal. Nov. 2, 2010) (internal citations omitted)).  The test for determining the prevailing party under Cal. Civ. Code § 3344 is whether the party seeking to be found as the prevailing party prevailed on a "practical level."  *Gilbert v. National Enquirer*, 55 Cal. App. 4th 1273, 1277, 64 Cal. Rptr. 2d 659 (1997).  In making the prevailing party determination, "the critical issue is which party realized its objectives in the litigation."  *Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 107 (1998) (applying standard to award attorneys' fees under Cal. Code Civ. P. § 425.16); *see also Heather Farms Homeowners Ass'n v. Robinson*, 21 Cal. App. 4th 1568, 1574 (1994) (holding that under prevailing party attorneys fees provisions of California Civil Code § 1354, court is to determine which party prevailed on a practical level).  Further, under California law, a prevailing party determination is not made based simply on whether a party obtained a net monetary recovery, as is done for purposes of costs under California law.  On the contrary, the California courts have expressly rejected application of that standard in determining the prevailing party for purposes of attorneys' fees.  *See*, *e.g.*, *Heather Farms Homeowners Ass'n*, 21 Cal. App. 4th at 1574 ("the premise  . . . that a litigant who prevails under the cost statute is necessarily the prevailing party for purposes of attorneys' fees, has been uniformly rejected by the courts of this state"); *McClarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn.*, 231 Cal. App. 3d 1450, 1456 (1991) ("We

-34-

1   emphatically reject the contention that the prevailing party for the award of costs

2   under section 1032 is necessarily the prevailing party for the award of attorneys'

3   fees").

4

5        The Lanham Act similarly provides for attorneys' fees "only if the case is an

6   'exceptional one.'"  *Id.* at * 4 (internal citations omitted).  Exceptional cases are

7   those that are "groundless, unreasonable, vexatious, or pursed in bad faith," but the

8   prevailing party need only establish one attribute of an exceptional case, not all four.

9   *Id.  See also Gracie v. Gracie,* 273 F. 3d 1060, 1071 (9th Cir. 2000).

10

11       Finally, Rule 68, entitled "Offer of Judgment," provides in pertinent part that

12  a defendant can serve on a plaintiff "an offer to allow judgment to be taken against

13  the [defendant] for the money or property or to the effect specified in the offer, with

14  costs then accrued."  FED. R. CIV. P. 68.  Rule 68 further provides in pertinent part

15  that "[i]f the judgment finally obtained by the offeree is not more favorable than the

16  offer, the offeree must pay the costs incurred after the making of the offer."  *Id.*  The

17  language of Rule 68 makes clear that the award of costs is mandatory.  *See* FED. R.

18  CIV. P. 68 (". . . offeree must pay the costs. . . .").

19

20       Costs which may be awarded under Rule 68 include all costs properly

21  awardable under relevant substantive statute; thus, where underlying statute defines

22  costs to include attorney fees, fees are to be included as costs for purposes of Rule

23  68.  *See generally Marek v Chesny* 473 US 1(1985), *superseded by statute on other*

24  *grounds* by Fernando v Hotel Nikko Saipan, 1992 U.S. Dist. LEXIS 10228 (D.

25  Mariana Islands, March 7, 1992), *and superseded by statute on other grounds* by

26  Dalal v Alliant Techsystems, Inc., 182 F.3d 757 (10th Cir. 1999).

27

28

Moreover, the Ninth Circuit has repeatedly confirmed that the award of post-offer costs to defendant is mandatory by the court.  In *United States v. Trident Seafoods Corp.*, the Ninth Circuit stated that "[t]he award is mandatory; Rule 68 leaves no room for the court's discretion."  92 F.3d 855, 859 (9th Cir. 1996).  Similarly, in *Simon v. Intercontinental Transp. (ICT) B.V.*, the Ninth Circuit stated that "[w]e have held, however, that the mandatory cast of the rule 'leaves no room for district court discretion.'"  882 F.2d 1435, 1438-1439 (9th Cir. 1989).  Also, the Ninth Circuit stated that "when a proper Rule 68 offer is made and the other requirements of the rule are met, the district court must award costs. . . .'"  *Id.*

## VII.
## ABANDONMENT OF ISSUES [L.R. 16-4.6]

Defendants have abandoned their ninth affirmative defense of preemption, as pleaded in the *Amended Answer*.  [ECF Docket No. 147.]  There are no other pleaded claims or defenses that have been abandoned.

November 19. 2012                SHEPPARD. MULLIN. RICHTER & HAMPTON LLP

By        *s/ Kent R. Raygor*
                KENT R. RAYGOR

Attorneys for Defendants
NATIONAL ENTERTAINMENT
COLLECTIBLES ASSOCIATION, INC. and
JOEL WEINSHANKER

SMRH:407219192.7

-36-